IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| HILDA WALDINE MACK, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-09-53 |
| | § | |
| MELVIN D. TALASEK d/b/a | § | |
| TALASEK'S GATE GUARDS, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM, RECOMMENDATION, AND ORDER

Pending before the court[1] is Defendant's Motion for Summary Judgment (Docket Entry No. 45) and Defendant's Motion for Leave to File a Response to Plaintiffs' Reply to Defendant's Motion for Summary Judgment (Docket Entry No. 53).

The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **DENIES IN PART**, **GRANTS IN PART** Defendant's Motion for Leave to File (Docket Entry No. 53). Furthermore, the court **RECOMMENDS** that Defendant's Motion for Summary Judgment (Docket Entry No. 45) be **GRANTED**.

### I.  Case Background

Plaintiffs Hilda Waldine Mack ("Plaintiff Mack"), Barbara J.

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Docket Entry No. 34.

Watkins ("Plaintiff Watkins"),[2] and Robert D. Boutin ("Plaintiff Boutin") (collectively, "Plaintiffs") filed this action on August 21, 2009, against their former employer Melvin D. Talasek d/b/a Talasek's Gate Guards ("Defendant") for minimum and overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.

Defendant provided gate guard services within the state of Texas for properties upon which oil wells were being drilled. Defendant marketed the business and secured contracts with various oil companies.[3] Defendant paid expenses in connection with the company, such as advertising, vehicle expenses, utilities, insurance, etc.[4]

Defendant hired Plaintiffs and others to sign people in and write people out as they entered and exited the gated properties, a task Plaintiffs aver required no special skills or educational requirements.[5] The first time each reported to a job site to begin work, each Plaintiff was given only minor instruction on how to perform the job, sometimes only by the gate guard who was being

---

[2] Plaintiff Watkins died before she was deposed or provided answers to written discovery. Docket Entry No. 47, Plaintiffs' Response to Defendant's Motion for Summary Judgment ("Plaintiffs' Response"), p. 3 n.2. She was replaced in this lawsuit by the administrator of her estate, Teresa Joann Huckaby.

[3] Id. at Ex. 1, Deposition of Defendant, p. 36.

[4] Id. at Ex. 4, Defendant's 2007 & 2008 Tax Returns.

[5] Id. at Ex. 1, Deposition of Defendant, pp. 17-18; Ex. 2, Deposition of Plaintiff Mack, p. 88; Ex. 5, Deposition of Plaintiff Boutin, p. 47.

relieved.[6]  Plaintiffs were expected to, and did, work with no day-to-day supervision, as Defendant rarely visited work sites except to deliver paychecks.[7]

Plaintiffs had to remain at their gate posts for the duration of their shifts.[8]  They had some choice in the length of their shifts, though the shifts were generally between ten and fourteen days in length.[9]  They worked twenty-four hours a day for each ten-to-fourteen day shift, generally alternating with equal periods of time off.[10]  Each Plaintiff worked this schedule for between approximately six and ten months.[11]  Defendant supplied the on-site trailers used by Plaintiffs to sleep, eat, and otherwise live while on duty.[12]

Plaintiffs were paid a fixed rate of initially $100 and later up to $140 each day.[13]  Defendant paid Plaintiffs at the end of each shift and later provided them with 1099 forms for the Internal

---

[6]   Id. Ex. 5, Deposition of Plaintiff Boutin, pp. 46-47.

[7]   Docket Entry No. 45, Defendant's Motion for Summary Judgment ("Defendant's MSJ"), Deposition of Plaintiff Mack, p. 18; Ex. 3, Deposition of Defendant, p. 12.

[8]   Docket Entry No. 47, Plaintiffs' Response, Ex. 1, Deposition of Defendant, pp. 18, 24-25.

[9]   Id. at 18; Ex. 2, Deposition of Plaintiff Mack, p. 89.

[10]  Id. at Ex. 1, Deposition of Defendant, p. 41.

[11]  See id. at Exs. 6 & 6A, Paychecks from Defendant to Plaintiffs.

[12]  Id. Ex. 1, Deposition of Defendant, p. 36.

[13]  Id. at 25, 29; Ex. 5, Deposition of Plaintiff Boutin, p. 46.

Revenue Service ("IRS") for 2007 and for 2008.[14]  Plaintiffs declared to the IRS that they were self-employed, both while working for Defendant and while working for companies before and after working with Defendant.[15]  Having declared themselves self-employed to the IRS, Plaintiffs also deducted expenses related to their work as gate guards, including, for example, travel to the locations and meals while on duty.[16]  Each Plaintiff also received supplemental social security income.[17]

Upon completion of any shift, Plaintiffs were under no obligation to return to work for another job or to accept a request by Defendant that they work at another location.[18]  Plaintiffs were hired on a project-by-project or job-by-job basis.[19]  Plaintiffs were not guaranteed continued work beyond each job; rather, from

---

[14]   Id. at Ex. 7, Defendant's 1099 Forms for 2008 for Plaintiffs Mack & Boutin.

[15]   Docket Entry No. 45, Defendant's MSJ, Ex. 1, Deposition of Plaintiff Mack, p. 18; Ex. 2, Deposition of Plaintiff Boutin, p. 29; Ex. 12, Interrogatories of Plaintiff Mack, Nos. 7, 8; Docket Entry No. 59, Defendant's Reply to Plaintiffs' Response ("Defendant's Reply"), Ex. A, Plaintiff Mack's Tax Returns for 2007, 2008, & 2009; Ex. B, Plaintiff Boutin's Tax Returns for 2007 & 2008; Ex. C, Plaintiff Watkin's Tax Returns for 2007 & 2008; Ex. I, Deposition of Plaintiff Mack, pp. 6-13, 54-58.

[16]   Docket Entry No. 59, Defendant's Reply, Ex. A, Plaintiff Mack's Tax Returns for 2007, 2008, & 2009; Ex. B, Plaintiff Boutin's Tax Returns for 2007 & 2008; Ex. C, Plaintiff Watkin's Tax Returns for 2007 & 2008.

[17]   Docket Entry No. 45, Defendant's MSJ, Ex. 1, Deposition of Plaintiff Mack, p. 18; Ex. 2, Deposition of Plaintiff Boutin, p. 43; Docket Entry No. 47, Plaintiffs' Response, Ex. 1, Deposition of Defendant, p. 36.

[18]   Docket Entry No. 45, Defendant's MSJ, Ex. 2, Deposition of Plaintiff Boutin, p. 43; Docket Entry No. 47, Plaintiffs' Response, Deposition of Plaintiff Mack, pp. 88-89.

[19]   Id.

the beginning of their relationships with Defendant, Plaintiffs were aware that their positions were temporary.[20] There were also no restrictions on working for other gate guard companies while working for Defendant.[21] A written contract between Defendant and Plaintiff Mack identifies her as an independent contractor, although it was signed in 2009, after the 2007-2008 period in question in this lawsuit.[22]

### II. Defendant's Motion for Leave to File a Response

In its motion, Defendant seeks: (1) to add to its summary judgment motion evidence that was received after the summary judgment deadline; (2) leave to respond "if and when Plaintiffs comply with . . . [the] July 28, 2010 Order Granting Defendant's Motion to Compel;" and (3) leave to respond to Plaintiffs' Reply to Defendant's Motion for Summary Judgment.[23]

First, the court notes that Defendant's argument with respect to amendment of pleadings under Federal Rule of Civil Procedure 15 is inapplicable to a request to amend a motion for summary judgment, which is not a pleading. On the other hand, Plaintiffs

---

[20] Docket Entry No. 45, Defendant's MSJ, Ex. 2, Deposition of Plaintiff Boutin, p. 43.

[21] See e.g., Docket Entry No. 47, Plaintiffs' Response, Deposition of Defendant, p. 25 (stating the entirety of the agreement between Defendant and each Plaintiff).

[22] Docket Entry No. 59, Defendant's Reply, Ex. D, 2009 Contract Between Plaintiff Mack and Defendant.

[23] Docket Entry No. 53, Defendant's Motion for Leave to File a Response to Plaintiffs' Reply to Defendant's MSJ, ¶ 1.

only argue that the motion should be denied because the evidence that Defendant wishes to add is irrelevant to deciding the issue for which Defendant offers it.[24]

The court will consider all of the evidence and responses currently before it in deciding the pending motion for summary judgment.[25] Therefore, the court grants Defendant's motion to the extent that it has already submitted its evidence and responses to this court and denies the motion with respect to any evidence or responses that Defendant has not yet submitted. Accordingly, Defendant's motion for leave to file is **DENIED IN PART**, **GRANTED IN PART**.

## II. Defendant's Summary Judgment Motion

### A. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet

---

[24] Docket Entry No. 55, Plaintiffs' Response to Defendant's Motion to Amend Summary Judgment, p. 1.

[25] Docket Entry No. 45, Defendant's MSJ.

Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002). The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).

**B. Analysis**

The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined maximum hours. See 29 U.S.C. § 207(a)(1) (requiring that covered employers pay employees at least one-and-a-half times the regular rate for hours worked in excess of forty hours per week). It allows employees to bring an action against their employers for violation of its hour and wage provisions. See 29 U.S.C. §§ 215-216.

In its motion for summary judgment, Defendant argues that the FLSA is inapplicable to the facts of this lawsuit because: (1) Defendant is not an individual or an enterprise engaged in interstate commerce, and (2) Plaintiffs do not fit within the

definition of "employees" that are covered by the FLSA.[26] Alternatively, Defendant claims exemption from the FLSA because he allegedly paid Plaintiffs in good faith according to a pre-employment agreement for irregular hours worked that was standard in the industry and that was approved by the IRS in Defendant's 2007 audit.[27]

Finding the second issue dispositive, the court first considers whether Plaintiffs were 1) employees of Defendant within the meaning of the FLSA, or 2) independent contractors and thus not subject to the FLSA's compensation requirements. The determination of whether Plaintiffs are employees under the FLSA is a legal, not a factual, finding.[28] See Lindsley v. BellSouth Telecomms. Inc., No. 09-30699, 2010 WL 4609109, at *1 (5th Cir. Nov. 15, 2010) (unpublished) (citing Brock v. Mr. W Fireworks, Inc., 814 F.2d 1042, 1045 (5th Cir. 1987)).

The court determines whether a worker qualifies as an employee under the FLSA by focusing on "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." Hopkins v. Cornerstone Am., 545 F.3d 338, 343 (5th Cir. 2008).

---

[26] Docket Entry No. 45, Defendant's MSJ, p. 1.

[27] Id.

[28] Although the parties differ greatly on the interpretation and meaning of the facts as they affect the outcome of this case, there appears to be no genuine issue of material fact with respect to what those facts are.

"The determination of whether an individual is an employee or independent contractor is highly dependent on the particular situation presented." Thibault v. Bellsouth Telecomms., Inc., 612 F.3d 843, 848 (5th Cir. 2010).  No single factor will be determinative of the court's inquiry.  Hopkins, 545 F.3d at 343.

The five non-exhaustive factors most often considered by the courts are: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship."  Hopkins, 545 F.3d at 343.

Plaintiffs argue that the evidence shows that they were employees of Defendant.  First, Plaintiffs argue that they exercised little or no control over their work, because Defendant marketed the business; the oil companies contracted with Defendant, not them; Plaintiffs had no control over the terms of those contracts; they had no control over site selection; they had to remain at their posts for the duration of their ten-to-fourteen day shifts; and they were paid a fixed amount per day.  Second, Plaintiffs argue that they had very little investment in the job relative to Defendant, because Defendant invested his own labor in securing contracts with oil companies; Defendant supplied the on-

9

site trailers used by Plaintiffs; and Defendant paid substantial expenses in connection with the company, such as advertising, vehicle expenses, utilities, insurance, etc.  Third, Plaintiffs argue that they had no opportunity for profit or loss in performing their jobs, because they were paid a fixed rate each day and had no opportunity to apply initiative or skill to increase their income. Fourth, Plaintiffs argue that the "skill and initiative" consideration suggests they were employees, because their work required neither unique skills nor significant initiative to sign people in and out at the gate.  Fifth, Plaintiffs argue that the permanency of the working relationship militates in favor of employee status, because they worked shifts of ten-to-fourteen days, twenty-four hours a day, alternating with equal periods of time off, and because each Plaintiff roughly worked this schedule for between approximately six and ten months.

Having careful examined the summary judgment record, however, the court finds that, ultimately, the particular circumstances of Plaintiffs' relationships with Defendant, considered in their entirety, do not reflect, as a matter of economic reality, the degree of economic dependence on Defendant that constitutes employee status. The court finds the following facts persuasive.

Although signed in 2009, after the 2007-2008 period in question for this lawsuit, a written contract between Defendant and Plaintiff Mack identifies her status as an independent contractor

10

for the same type of work she performed for Defendant during the relevant period. See Thibault, 612 F.3d at 845-46 (noting that the contractual designation of a worker as an independent contractor is not controlling but is relevant).

Defendant paid Plaintiffs at the end of each ten-to-fourteen day shift, later providing them with 1099 forms for 2007 and for 2008. See Carrell v. Sunland Constr., Inc., 998 F.2d 330, 334 (5th Cir. 1993) (finding that plaintiffs were independent contractors when they were aware that their alleged employer classified them as independent contractors).

Plaintiffs declared to the IRS that they were self-employed both while working for Defendant and while working for similar companies before and after working with Defendant. See Talbert v. Am. Risk Ins. Co., Inc., No. 10-20355, 2010 WL 5186768, at *7 (5th Cir. Dec. 20, 2010) (unpublished) (finding that the plaintiff was an independent contractor when her resume reflected that she had held herself out to be an independent contractor, having worked for multiple companies prior to working for her alleged employer for a period of twelve weeks); Lindsley, 2010 WL 4609109, at *2 (finding that the plaintiff was an independent contractor when he considered himself self-employed); Thibault, 612 F.3d at 846 (finding that the plaintiffs were independent contractors when they considered themselves self-employed); Carrell, 998 F.2d at 334 (finding that plaintiffs were independent contractors when many of them

classified themselves as self-employed).

Having declared themselves self-employed to the IRS, Plaintiffs also deducted expenses related to their work as gate guards, including, for example, travel to the locations and meals while there.  See Lindsley, 2010 WL 4609109, at *2 (finding that the plaintiff was an independent contractor when he paid self-employment tax).

Each Plaintiff also received supplemental social security income.  See Thibault, 612 F.3d at 849 (finding that the plaintiff was an independent contractor when he had other sources of income and noting that an individual's wealth is not a dispositive factor in the economic dependence question).

Plaintiffs had some choice in the length of their shifts (generally between seven and fourteen days).  In addition, upon completion of any shift, Plaintiffs were under no obligation to return to work for another shift or to accept any request by Defendant that they work at another location; as such, Plaintiffs ultimately controlled the amount of time that they worked for Defendant.  See Talbert, 2010 WL 5186768, at *7 (finding that the plaintiff was an independent contractor when she controlled how much she worked for the alleged employer); Harrison v. Greyvan Lines, Inc., 331 U.S. 704, 707 (1947) (finding that the plaintiffs were independent contractors when they could refuse to take certain job assignments without penalty).

Although Plaintiffs' jobs were not heavily skill-dependent, the evidence shows that Plaintiffs were not trained by Defendant but, rather, were only given minor instruction by the gate guard whom they were relieving. See Thibault, 612 F.3d at 847 (finding that the plaintiffs were independent contractors when the alleged employer did not train them to do their jobs and they simply learned by "on the job" training); Cromwell v. Driftwood Elec. Contractors, Inc., 348 Fed. App'x 57, 61 (5th Cir. Oct. 12, 2009) (unpublished) (noting that the fact that the plaintiffs controlled the details of how they performed their work weighed in favor of independent-contractor status); Harrison, 331 U.S. at 707 (finding that the plaintiffs were independent contractors when they were not instructed how to do their jobs).

Plaintiffs were expected to, and did, work with no day-to-day supervision, as Defendant rarely visited the work sites except to deliver paychecks. See Talbert, 2010 WL 5186768, at *7 (finding that the plaintiff was an independent contractor when she was expected to handle the files assigned to her with little or no day-to-day supervision); Thibault, 612 F.3d at 847 (finding that the plaintiffs were independent contractors when their supervisors only came by occasionally and never specified how they should do their jobs); Cromwell, 348 Fed. App'x at 61 (noting that the fact that the plaintiffs were not closely supervised weighed in favor of independent-contractor status).

Plaintiffs were hired on a project-by-project or job-by-job basis. See Thibault, 612 F.3d at 846 (finding that the plaintiffs were independent contractors when their work lasted only until their particular project was finished); Carrell, 998 F.2d at 334 (finding that plaintiffs were independent contractors when their relationships with their alleged employer was on a project-by-project and job-by-job basis).

Plaintiffs were not guaranteed continued work beyond each shift; rather, it is undisputed that, from the beginning of their relationships with Defendant, Plaintiffs were aware that their positions were expressly temporary. See Talbert, 2010 WL 5186768, at *7 (finding that the plaintiff was an independent contractor when she was aware from the beginning of her relationship with her alleged employer that her position was expressly temporary); Thibault, 612 F.3d at 847 (finding that the plaintiffs were independent contractors when they would finish a particular job and report back to their alleged employer for other possible job assignments).

There were no restrictions on working for other gate guard companies while working for Defendant. See Talbert, 2010 WL 5186768, at *7 (finding that the plaintiff was an independent contractor when she was not precluded from doing the same type of work for other companies while she worked for her alleged employer); Hopkins, 545 F.3d at 346 (finding that the plaintiffs

14

were employees when they were not allowed to work for other companies or themselves); Harrison, 331 U.S. at 707 (finding that the plaintiffs were independent contractors when the could perform the same type of work for other companies).

FLSA cases commonly have "facts pointing in both directions" regarding the issue of employee status. Herman v. Express Sixty-Minutes Delivery Serv., Inc., 161 F.3d 299, 305 (5th Cir. 1998 (quoting Carrell, 998 F.2d at 334). However, on balance, taking into account all of the summary judgment evidence, the court concludes that, as a matter of law, Plaintiffs were independent contractors, and not employees, of Defendant. Therefore, Plaintiffs did not fall under the auspices of the FLSA while working for Defendant and were not covered by its minimum wage and overtime provisions.

Accordingly, the court **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period

mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. The original of any written objections shall be filed with the United States District Clerk electronically.

    **SIGNED** in Houston, Texas, this 18th day of February, 2011.

Nancy K. Johnson
United States Magistrate Judge