UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **HILDA WALDINE MACK**, *et al*., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-09-53 |
| | § | |
| **MELVIN D. TALASEK**, | § | |
| d/b/a **TALASEK'S GATE GUARDS**, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

**I. Background**

On August 21, 2009, Plaintiffs Hilda Mack, Robert Boutin, and Barbara Watkins[1] ("Plaintiffs") filed their Original Complaint against their former employer, Defendant Melvin D. Talasek d/b/a Talasek's Gate Guards ("Talasek"), for minimum and overtime wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq*. (Dkt. No. 1.) On May 21, 2010, Talasek filed a Motion for Summary Judgment (Dkt. No. 45), to which Plaintiffs responded (Dkt. No. 47).[2] Magistrate Judge Nancy K. Johnson issued a Memorandum, Recommendation, and Order (M&R) on February 18, 2011, recommending that Talasek's Motion for Summary Judgment be granted on the grounds that Plaintiffs were independent contractors rather than Talasek's employees. (Dkt. No. 65.)

Plaintiffs timely filed their objections to the M&R on March 4, 2011 (Dkt. No. 67). After considering the M&R, the objections, the entire record, and the applicable law, the Court **SUSTAINS** Objection Nos. 1, 3, 5, and 7; **OVERRULES** Objection Nos. 2, 4, and 6; and

---

[1]. Watkins died before she was deposed or provided responses to written discovery. She was replaced in this lawsuit by the administrator of her estate, Teresa Huckaby.

[2]. The Parties thereafter filed a number of pleadings, including: Plaintiffs' motion to substitute an exhibit, which Magistrate Johnson granted (Dkt. Nos. 48, 49); Talasek's supplemental evidence and argument (Dkt. No. 53) and Plaintiffs' response (Dkt. No. 55); and Talasek's additional supplemental evidence and argument (Dkt. No. 59), Plaintiffs' response (Dkt. No. 60), Talasek's reply (Dkt. No. 63), and Plaintiff's sur-reply (Dkt. No. 64).

1

**ADOPTS** the recommendation of the M&R that Defendant's Motion for Summary Judgment be **GRANTED**.

## II. Legal Standard

A district court that refers a case to a magistrate judge must review de novo any portions of the magistrate judge's proposed findings and recommendations on dispositive matters to which the parties have filed specific, written objections. *See* FED. R. CIV. P. 72(b). The district court may accept, reject, or modify, in whole or in part, those portions of the proposed findings and recommendations. *See id.*

## III. Analysis

### A.  Objection 1: Ms. Mack's Alleged Contract

Plaintiffs first complain that the M&R errs in stating that "[a] written contract between Defendant and Plaintiff Mack identifies her as an independent contractor, although it was signed in 2009, after the 2007-2008 period in question in this lawsuit." (M&R at 5 & n.22 (citing Dkt. No. 59, Ex. D).) According to Plaintiffs, the Independent Contractor Agreement at issue was executed between Mack and another company for which Mack worked after she worked for Talasek (Gate Guard Services, L.P.), and Talasek was not a party to that contract.

Based on a review of the evidence, the Court agrees that Talasek was not a party to the "Independent Contractor Agreement" between Mack and Gate Guard Services, L.P. To the extent the M&R states otherwise, Plaintiffs' Objection Number 1 is **SUSTAINED**.

### B.  Objection 2: Degree of Control

Plaintiffs next complain that, under the law of *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042 (5th Cir. 1987), the M&R erroneously determined that Plaintiffs had some control because they: (1) had control over the length of their shifts; (2) were under no obligation to return to work for another shift or to accept any request by Talasek that they work at another location; and (3)

were under no restrictions on working for other gate guard companies while working for Talasek. According to Plaintiffs, "What matters 'is not what [Plaintiffs] could have done that counts, but as a matter of economic reality what they actually do that is dispositive." (Dkt. No. 67 at 14 (quoting *Mr. W*, 814 F.2d at 1047).)

The Court finds the M&R's determination that Plaintiffs had some control over the lengths of their shifts to be correct. (Talasek Dep., Dkt. No. 47, Ex. 1 at 18:10-14 (Boutin was asked "if he wanted to work week on, 10 days on to two weeks on, and he said he would like to work two weeks on and two weeks off."); Boutin Dep., Dkt. No. 47, Ex. 5 at 47:19-25 (Q: How did [Talasek] specify the shift time? A: Well, with that . . . he did have some laxity on it. I mean, if we suggested we could do this, he was always open to that suggestion, that if it would make the whole thing work easier, he was for it.").) The Court also finds the M&R was correct in finding that Plaintiffs were under no obligation to return to work for another shift or to accept any request by Talasek that they work at another location. (Talasek Aff., Dkt. No. 45, Ex. 4 at 3 (Plaintiffs were given the right to decide if and when they wanted another shift.).) Finally, the Court finds that Plaintiffs have presented no evidence that they were under any restrictions on working for other gate guard companies during the extended periods of time between jobs they performed for Talasek.

Plaintiffs are correct that the Fifth Circuit in *Mr. W* stated that what matters is what workers actually do, as opposed to what they could have done. *Mr. W*, 814 F.2d at 1047. However, in other cases, the Fifth Circuit has instead relied on what restrictions the purported employer placed on workers, instead of what the workers chose to do, in concluding that workers were independent contractors and not employees. For example, in *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1990), the Fifth Circuit concluded that that control factor weighed in favor of finding that more than 50 delivery drivers were

independent contractors where an independent contractor agreement between the drivers and the defendant company did not contain a covenant-not-to-compete, the drivers could work for other courier delivery systems, and the drivers could reject deliveries without retaliation. The Fifth Circuit did not address whether the drivers actually *did* work for other companies or reject deliveries; however, the district court noted that only one driver testified that he worked for another company at the same time he worked for the defendant. *Id.* at 302. Similarly, in *Talbert v. Am. Risk Ins. Co.*, 405 Fed. App'x 848, 856 (5th Cir. 2010), the Fifth Circuit found that an insurance adjuster was an independent contractor and noted that although she worked exclusively for the defendant during the time period in question, "[t]here [was] nothing in the confidentiality agreement that would have precluded her from working for other insurance companies . . . ." Thus, the Court finds the M&R did not err in considering what Plaintiffs could have done.

      Finally, and most importantly, the Court agrees with the M&R's finding that Plaintiffs worked with no day-to-day supervision, as Plaintiffs' own testimony shows that Talasek exerted no control over how they performed their jobs. Boutin admitted that Talasek had no control over what Plaintiffs did on a daily basis "outside of requiring [them] to be at the shift site." (Boutin Dep., Dkt. No. 47 at 47:15-18.) Mack testified that she did not even meet Talasek until after she had been on a job site for about a week, and because she had worked as a gate guard before, her only "orders" were to "continue what [she had] been doing," that is, to sign people in and out. (Mack Dep., Dkt. No. 45, Ex. 1 at 25:7-21.) With respect to Plaintiffs' job duties at each individual well site, Plaintiffs stated that landowners and/or oil company men would sometimes give them a list of people to whom they were to refuse entrance. (Mack Dep., Dkt. No 45, Ex. 1 at 11:10-25; Boutin Dep., Dkt. No. 45, Ex. 2 at 10:19-22.) Mack further testified that "if [her] company men requested something special to be done at the front gate, [she] took orders from them." (Mack Dep., Dkt. No 45, Ex. 1 at 24:21-23.) Thus, to the extent Plaintiffs were given any

4

specific orders concerning their day-to-day duties, Plaintiffs were under the control of the landowners and oil companies, not Talasek. *See Carrell v. Sunland Constr., Inc.*, 998 F.2d 330, 332 (5th Cir. 1993) (control factor weighed in favor of independent contractor status where customers, not purported employer, dictated how welders did their jobs).

The Court finds that the control factor weighs in favor of finding that Plaintiffs were independent contractors. Accordingly, Plaintiffs' Objection No. 2 is **OVERRULED**.

### C.  Objection 3: Relative Investments

Plaintiffs next object to the M&R's analysis of the relative investments factor and argue that at most, Plaintiffs' investment in their job was limited to things necessary for getting to and living at the gates. According to Plaintiffs, "In paying for their own transportation to and from work, for the food they consumed at work, and for a cell phone to use at work, the plaintiffs were like virtually every employee in America." (Dkt. No. 67 at 19.)

While this may be true, "virtually every employee in America" does not seek a tax write-off for these expenses. Moreover, Plaintiffs' income tax returns for 2007, 2008, and 2009 show that in addition to food, cell phone service, and transportation, Plaintiffs also deducted business-related expenses for office expenses, supplies, taxes, licenses, entertainment, advertising, contract labor, and insurance. (Mack Tax Returns, Dkt. No. 59, Exs. A, $A_1$ & $A_2$; Boutin Tax Returns, *Id.*, Exs. B & $B_1$; Watkins Tax Returns, *Id.*, Exs. C & $C_1$.)

Still, the record shows that Talasek's investments substantially outweighed those of Plaintiffs. Talasek's income tax returns for 2007 and 2008 show approximately $500,000 in annual expenses related to advertising; car and truck expenses; renting or leasing vehicles, machinery and equipment; meals and entertainment; utilities; insurance; RV trailer expenses; alert bells; and dirt. (Dkt. 47, Ex. 4.) Talasek also invested his own labor in securing contracts

with customers, and he supplied the on-site trailers that Plaintiffs used as living quarters while on shift. (Talasek Dep., Dkt No. 47, Ex. 1 at 36:7-13.)

The Court finds that the relative investments factor weighs in favor of finding that Plaintiffs were employees. To the extent the M&R concluded otherwise, Plaintiffs' Objection No. 3 is **SUSTAINED**.

### D. Objection 4: The Degree to Which Plaintiffs' Opportunity for Profit or Loss Was Determined by Talasek

Plaintiffs next complain that the evidence relevant to the third *Hopkins* factor—control over what Plaintiffs stood to earn—does not support a finding that Plaintiffs were independent contractors. According to Plaintiffs, they could not increase their income during any fixed period, regardless of how much initiative and skill they applied, nor did they face any risk of loss.

As noted in Part III.C *supra*, Plaintiffs' tax returns show that they deducted business-related expenses for office expenses, food, transportation, cell phone service, supplies, taxes, licenses, entertainment, advertising, contract labor, and insurance. Moreover, contrary to Plaintiffs' assertion that they did not face any risk of loss, the record shows that in 2007, Boutin lost more than $2000 as a self-employed gate guard. (Boutin 2007 Tax Records, Dkt. No. 59, Ex. B$_1$.) Specifically, Boutin reported receiving $12,725 in payment for his "gate guard business," but claimed $14,882 in expenses connected with his business. (*Id.*) Based on the summary judgment record, the Court finds that Plaintiffs did face risk of loss and, like the plaintiffs in *Thibault* and *Carrell*, Plaintiffs could have increased their profits by controlling their costs. *See Thibault v. Bellsouth Comm'ns, Inc.*, 612 F.3d 843, 846 (5th Cir. 2010) (finding plaintiff splicers were independent contractors and noting that plaintiffs "increased profits by controlling costs (repairs, supply costs, food, water, housing, etc.)"); *Carrell*, 998 F.2d at 332 (welders were

independent contractors where, although company "exerted some control over the Welders' opportunity for profits by fixing the hourly rate and the hours of work . . . , the tax returns of [one welder] indicate[d] that the Welders' profits also depend[ed] on their ability to control their own costs.").

Each Plaintiff also could have increased their overall profits by working more, either by taking more jobs with Talasek or by taking jobs with other general contractors, landowners, or oil companies during the extended periods of time they had off between jobs they worked for Talasek. (*See* Summaries of Dates on Locations, Dkt. No. 59, Exs. F, G, H.) For example, although Mack averaged 10 days between jobs, on one occasion she went an entire month without doing any work for Talasek, and on another occasion three weeks. (*Id.*, Ex. F.) Likewise, the record shows that Boutin and Watkins averaged between 10 and 14 days between jobs, and on one occasion Watkins went nearly two months without performing any work for Talasek. (*Id.* Exs. G, H.) Here, unlike the plaintiffs in *Cromwell*, Plaintiffs did not work a required schedule that precluded extra work. *See Cromwell v. Driftwood Elec. Contractors, Inc.*, 348 Fed. App'x 57, 61 (5th Cir. 2009) (factor related to opportunity for profit or loss weighed in favor of employment status where employees' required schedule of 13 consecutive 12-hour days with one day off "had the effect of severely limiting any opportunity for profit or loss" by "preclud[ing] significant extra work.").

The Court finds that "opportunity for profit or loss" factor weighs in favor of finding that Plaintiffs were independent contractors. Accordingly, Plaintiffs' Objection No. 4 is **OVERRULED**.

### E. Objection 5: Skill and Initiative

Plaintiffs next object to the M&R's conclusion that the skill and initiative factor supports a finding that Plaintiffs were independent contractors because: (1) "[a]lthough Plaintiffs' jobs

7

were not heavily skill-dependent, the evidence shows that Plaintiffs were not trained by Defendant but, rather, were only given minor instruction by the gate guard whom they were relieving;" and (2) Plaintiffs "were expected to, and did, work with no day-to-day supervision, as Defendant rarely visited the work sites except to deliver paychecks." (M&R at 13.)

The Court agrees with the M&R's factual findings that Plaintiffs were not trained by Talasek and worked with no day-to-day supervision. However, these findings go more towards the issue of whether Talasek exerted control over Plaintiffs. With respect to the skill and initiative factor, the Court finds that Plaintiffs' job duties of writing down the license plate numbers of vehicles that came in and out of oilfield gates required no special training or unique skill set.

The Court finds that the skill and initiative factor weighs in favor of finding that Plaintiffs were employees. To the extent the M&R concluded otherwise, Plaintiffs' Objection No. 5 is **SUSTAINED**.

## F. Objection 6: Permanency of the Relationship

Plaintiffs next object to the M&R's factual finding that each plaintiff worked for Talasek "for between approximately six and ten months" based on the dates of paychecks, produced by Talasek in discovery, that each plaintiff received in 2007 and 2008. (M&R at 3.) According to Plaintiffs, they actually worked for Talasek for a longer period of time.

The record shows that Mack worked for Talasek off and on from April 2007 to November 2008 (20 months), Boutin worked for Talasek off and on from May 2007 to March 2008 (9 months), and Watkins worked for Talasek off and on from May 2007 to April 2008 (13 months). (*See* Summaries of Dates on Locations, Dkt. No. 59, Exs. F, G & H.) To the extent the M&R concluded that each plaintiff worked for Talasek "for between approximately six and ten

8

months," Plaintiff's objection is sustained. However, for the reasons explained below, this does not change the Court's analysis of the permanency factor.

Plaintiffs further object to the M&R's factual findings that Plaintiffs: (1) "were hired on a project-by project or job-by-job basis;" and (2) "were not guaranteed continued work beyond each shift; rather, it is undisputed that, from the beginning of their relationships with Defendant, Plaintiffs were aware that their positions were expressly temporary." (M&R at 14.) According to Plaintiffs, the M&R cites certain deposition testimony of Mack and Boutin to support these factual findings, "*but neither witness said anything of the sort.*" (Dkt. No. 67 at 27 (emphasis in original).)

The Court finds that the specific testimony cited by the M&R does not support a finding that Plaintiffs were hired on a job-by-job basis and were not guaranteed continued work beyond each shift. However, Talasek's affidavit explicitly states that Plaintiffs agreed to accept work that was temporary and irregular; the assignments were well-by-well, jobsite-by-jobsite, and lasted for very short durations; Plaintiffs were paid at the end of each seven to ten-day shift; and at the end of each shift, Plaintiffs were given the right to decide if and when they wanted another shift. (Talasek Aff., Dkt. No. 45, Ex. 4 at 3.) Boutin's deposition testimony that he worked for Talasek "on and off, depending upon the availability of location" further corroborates Talasek's affidavit. (Boutin Dep., Dkt. No. 45, Ex. 2 at 17:10-12.) Plaintiffs have failed to provide any evidence to rebut Talasek's sworn statement that Plaintiffs were hired on a job-by-job basis and were fully aware that their positions were temporary. *See Talbert v. Am. Risk Ins. Co., Inc.*, 405 Fed. App'x 848, 856 (5th Cir. 2010) (finding plaintiff was independent contractor in part because "it [was] undisputed that, from the beginning of her relationship with [her purported employer], [plaintiff] was aware that her position was expressly temporary").

9

Moreover, as explained in Part III.D, *supra*, with respect to the profit-or-loss factor, unlike the plaintiffs in *Lindsley* and *Cromwell*, Plaintiffs could have easily taken other jobs during the extended periods of time they had off between jobs they worked for Talasek. *See Lindsey*, 401 Fed. App'x at 945—46 (fact that plaintiff worked 12 to 13-hour days for 13 consecutive days before receiving the fourteenth day off, such that plaintiff was unable to work for any other company, "pushed against," but did not preclude, a finding that plaintiff was an independent contractor); *Cromwell*, 348 Fed. App'x at 61 (permanency factor weighed in favor of employment status where splicers worked a schedule of 13 consecutive 12-hour days with 1 day off for approximately eleven months, and "did not have [a] temporary, project-by-project on-again-off-again relationship with their purported employers").

Finally, the Court notes that the permanency factor does not tip in favor of finding that Plaintiffs were employees merely because Talasek would offer Plaintiffs work at another job site at the completion of each shift. *See Carrell*, 998 F.2d at 332 (permanency factor weighed in favor of independent contractor status where company hired welders on a project-by-project basis, despite fact that company made an effort to move welders to subsequent projects).

The Court finds that the permanency factor weighs in favor of finding that Plaintiffs were independent contractors. Accordingly, Plaintiffs' Objection No. 6 is **OVERRULED**.

### G. Objection 7: The Recommendation's Alleged Erroneous Reliance on Plaintiffs' Social Security Income

Plaintiffs next object to the M&R's reliance on that fact that each Plaintiff received supplemental social security income in support of its finding that Plaintiffs were not economically dependent on Talasek because they had other sources of income. According to Plaintiffs, social security income (retirement and/or disability) has no tendency to show that Plaintiffs were in business for themselves.

In *Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 263—64 (5th Cir. 1987), the defendant company argued that the plaintiff worker was not economically dependent on it for her wages because, during the two and one-half years she worked for the company, she also received benefits from the federal government, money from her foster son, and other income she made by crocheting, babysitting, laundering, and raising pedigree poodles, which totaled more than three times her wages from the defendant. In rejecting the defendant's position that the plaintiff must have been dependent on these outside funds and not on the wages the defendant paid her, the Fifth Circuit reiterated its position in *Mr. W* that:

> [e]conomic dependence is *not* conditioned on reliance on an alleged employer for one's primary source of income, for the necessities of life. Rather, the proper test of economic dependence mandates consideration of all the factors, and in light of such consideration "examines whether the workers are dependent on a particular business or organization *for their continued employment*" in that line of business.

*Id.* at 267—68 (quoting *Mr. W Fireworks*, 814 F.2d at 1054 (emphasis in *Halferty*) (internal citations omitted).

> Thus, it is not dependence in the sense that one could not survive without the income from the job that we examine, but dependence for continued employment. Under [the defendant]'s interpretation, wealthy persons could never be employees under the FLSA, and employers could avoid liability to workers simply by paying them so low a wage that the workers are forced to live on other sources of income. We decline to adopt such a view.

*Id.* at 268.

The Court finds the fact that Plaintiffs received supplemental social security income has no relevance in determining whether they were employees or independent contractors. Accordingly, Plaintiffs' Objection No. 7 is **SUSTAINED**.

### H. Objection 8: The Recommendation's Alleged Erroneous Reliance on Plaintiffs' Income Tax Returns

Finally, Plaintiffs object to the M&R's reliance on Plaintiffs' income tax returns, whereby Plaintiffs declared to the IRS that they were self-employed. According to Plaintiffs,

11

their tax filing status may confirm independent contractor status proven by other evidence, but it cannot contradict a finding of employment status proven by other evidence.

As explained in Parts III.B, III.D, and III.F, *supra*, Plaintiffs' independent contractor status has been proven by other evidence. Thus, the M&R did not err on relying on Plaintiffs' income tax returns to support its conclusion that Plaintiffs considered themselves to be, and in fact were, independent contractors. *See Lindsley*, 401 Fed. App'x at 946 (splicer found to be independent contractor in part because he considered himself "self-employed" and had paid self-employment tax); *Carrell*, 998 F.2d at 334 (welders found to be independent contractors where they worked while aware that company classified them as independent contractors and many of them classified themselves as self-employed).

Talasek has also presented evidence that when he was audited in 2007, the IRS specifically questioned the 1099 forms he provided to Plaintiffs. (Ledwigg Aff., Dkt. No. 45, Ex. 6.) After further investigation, the IRS accepted Talasek's explanation for paying the gate attendants as independent contractors and issued Talasek a clearance letter. (*Id.*, Exs. 5, 6.)

The Court finds that the M&R did not err in relying on Plaintiffs' income tax returns to support its finding that Plaintiffs were independent contractors. Accordingly, Plaintiffs' Objection No. 8 is **OVERRULED**.

### I. Other Factors

In addition to the issues raised by Plaintiffs' enumerated objections, the Court also makes the following findings:

First, the Court finds that Boutin and Mack had oral contracts with Talasek whereby they agreed to work as independent contractors for at least $100 per day. (Boutin Dep., Dkt. No. 45, Ex. 2 at 32:6-10 (Boutin had a "firm, solid agreement" with Talasek that he would be paid $100 a day (and later $120 and then $140) to sign people in and out); Mack Dep., Dkt. No 45, Ex. 1 at

72:3-6) (same).) The contractual designation of [a] worker as an independent contractor is not *necessarily* controlling." *Thibault*, 612 F.3d at 846 (emphasis added). However, such a designation is relevant where it mirrors economic reality. *Hopkins v. Cornerstone America*, 545 F.3d 338, 346 (5th Cir. 2008). Because Plaintiffs' independent contractor status has been proven by other evidence (see Parts III.B, III.D, III.F, and III.G, *supra*), Plaintiffs' contractual designation as independent contractors is relevant, and the Court may properly consider this evidence.

The Court further finds that it has been Plaintiffs' practice to work as self-employed gate attendants for other companies under the nearly identical circumstances. (*See* Mack Tax Returns, Dkt. No. 59, Exs. A, $A_1$ & $A_2$; Boutin Tax Returns, *Id.*, Exs. B & $B_1$; Watkins Tax Returns, *Id.*, Exs. C & $C_1$.) For example, before working for Talasek, Mack worked as a gate attendant for a gate guard company operated by Tammy Warren. (Mack Response to Interrog. No. 7, Dkt. No. 45, Ex. 12.) Mack was paid $100 per day and worked shifts of seven days on, followed by off-periods of seven days, with no overtime. (*Id.*) Mack now works as a gate attendant with Gate Guard Services, LP, where, pursuant to an Independent Contractor Agreement, she is currently being paid $100 per day, with 24 hours of duty each day. (Mack Dep., Dkt. No. 45, Ex. 1 at 54:15—58:25.) Likewise, before contracting with Talasek, Boutin worked as a gate guard for another company on a one-week project while the company took a rig out in Cuero, Texas. (Boutin Dep., Dkt. No. 45, Ex. 2 at 29:8-15.) Boutin worked 24-hour shifts and was paid $100 per day. (*Id.* at 29:16-21.) Boutin admits that this payment method is "pretty standard." (*Id.*)

Case law is somewhat sparse and inconsistent with respect to whether industry custom or standard may be considered in determining whether individuals are independent contractors or employees under the FLSA. *See, e.g.*, *Mid-Continent Cas. Co. v. Davis*, 2011 WL 13727, *4 (N.D. Tex. Jan. 3, 2011) (recognizing that industry standard was to treat members of framing

13

crew as independent contractors, and "[p]ursuant to the industry standard . . . [alleged employer did] not have control over whether the crew members work[ed] for other framing crews or even r[a]n their own framing business."); *Tr. of Mich.Reg. Council of Carpenters Emp. Benefits Fund v. Fox Bros. Co.*, 2005 WL 3579173, *6 (E.D. Mich. Dec. 27, 2005) (fact that method of payment was according to industry standard supported a finding that plaintiffs were independent contractors); *but see Caballero v. Archer*, 2007 WL 628755, *4 (W.D. Tex. Feb 1, 2007) (expert's interpretation of industry standards was "not relevant to the legal standards for determining an employer/employee relationship"). However, the Fifth Circuit has stated that "courts must make allowances for those operational characteristics that are unique or intrinsic to the particular business or industry, and to the workers they employ." *Mr. W Fireworks*, 814 F.2d at 1054 (referring to seasonal nature of firework stands). Although not dispositive, the Court finds the fact that it is industry custom in this region for oilfield gate attendants to be treated as independent contractors and paid a per diem to live and work at well locations on a temporary, job-by-job basis is nonetheless relevant and supports a finding the Plaintiffs were independent contractors.

Finally, the Court notes that the underlying purpose of the FLSA would not be frustrated by a finding that Plaintiffs are not employees entitled to the protections of the FLSA. As the Fifth Circuit recognized in *Usery v. Pilgrim Equipment Co., Inc.*, 527 F.2d 1308, 1311 (5th Cir. 1976), the purpose of the FLSA "is to 'eliminate low wages and long hours' and 'free commerce from the interferences arising from production of goods under conditions that were detrimental to the health and well-being of workers.'" *Id.* (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947)). Here, the record shows that although Plaintiffs were required to stay on location 24 hours a day, their actual work duties of signing people in and out only took about 2 to 4 hours a day. (Talasek Aff., Dkt. No. 45, Ex. 4 at 4; *see also* Dkt. No. 60 at 15 n.19.) During the

14

remaining 20-22 hours each day that Plaintiffs were not signing people in and out, they were free to watch TV, eat, read, and sleep—"whatever [they] they wanted to do, as long as there wasn't a car at the gate." (Boutin Dep., Dkt. No. 45, Ex. 2 at 16:2-8.)

## IV. Conclusion

For the foregoing reasons, Plaintiffs' Objection Nos. 1, 3, 5, and 7 are **SUSTAINED**, and Objection Nos. 2, 4, 6, and 8 are **OVERRULED**. These rulings do not affect the Court's determination that the M&R was correct in concluding that Plaintiffs were independent contractors who did not fall under the auspices of the FLSA while working for Talasek. *See Herman*, 161 F.3d at 305 (acknowledging that "with most employee-status cases, there are facts pointing in both directions" and affirming district court's finding that workers were independent contractors where the degree of control, opportunity for profit or loss, and permanency factors favored such a finding, while the relevant investment and skill/initiative factors favored finding that the workers were employees).[3]

Accordingly, it is hereby **ORDERED** that the M&R issued by Magistrate Johnson on February 11, 2011 (Dkt. No. 65) is **ADOPTED** subject to the Court's ruling on Plaintiffs' objections. It is further **ORDERED** that Talasek's Motion for Summary Judgment (Dkt. No. 45) is **GRANTED**.

**SIGNED** this 28th day of March, 2012.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE

---

3. Talasek also moves for summary judgment on the grounds that it is not an "enterprise" under the FLSA and was not "engaged in interstate commerce." Because Plaintiffs were not employees, and because the M&R did not address this issue, the Court need not address this issue either.

15